IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RUSSELL E. SCOTT WALKER,          :
                                  :
          Plaintiff,              :
                                  :
     v.                           : Civil Action No. 23-20-CFC
                                  :
STATE OF DELAWARE, et al.,        :
                                  :
          Defendants.             :

Russell E. Scott Walker, Newark, Delaware.  Pro Se Plaintiff.


**<u>MEMORANDUM OPINION</u>**


June 23, 2023
Wilmington, Delaware

**CONNOLLY, Chief Judge:**

Plaintiff Russell E. Scott Walker appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 4) The Second Amended Complaint is the operative pleading. (D.I. 8)[1] Plaintiff has also filed a motion for summary judgment. (D.I. 7) The Court proceeds to screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

## I.   BACKGROUND

Plaintiff's allegations are assumed to be true for screening purposes. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021).

Plaintiff suffers from acute rheumatoid arthritis. He asserts that he treats the associate pain with a physician-approved regiment of alcohol, prescription prednisone, and exercise. Plaintiff also asserts that he is an alcoholic.

On May 12, 2021, Milford Police Department (MPD) officers found Plaintiff, then seventy-one years old, sleeping in his car, which was parked on private property. Plaintiff avers that his sleep constituted "a state of recovery after consuming alcohol," and that he was effectively sheltering in place. (D.I. 8 at 4) After police officers had awoken him, Plaintiff requested that they "reasonably accommodate" his disability of alcoholism by leaving him alone to sleep in his car.

---

[1] There is a pending motion to file a second amended complaint, seeking permission to file an earlier version of the operative Second Amended Complaint. (D.I. 6) That motion will be denied as moot.

When Plaintiff would not open the door, three officers drew their firearms and threatened him with arrest.

After Plaintiff opened his door, the officers "beat" him and "violently dragged" him from the car, injuring his right knee in the process. When the officers demanded that he submit to a field sobriety test, Plaintiff told them that he was disabled and again requested a "reasonable accommodation" of being left alone to sleep. The officers laughed at and denied the request, and they arrested Plaintiff because he fit the profile of an alcoholic. While arresting Plaintiff, the officers pushed, jostled, and roughly handcuffed him, injuring his hands and wrists. Plaintiff asserts that MPD officers are trained to use excessive force with inebriated drivers to intimidate and coerce them into confessing or agreeing to field sobriety tests. Plaintiff's car was towed and impounded.

Without advising Plaintiff of his Miranda rights, MPD officers transported him to Bay Health Hospital, where they forced him to submit to a blood draw to ascertain his blood alcohol concentration (BAC). At Bay Health Hospital, two hospital employees worked with the three MPD officers to "forcefully and violently" hold Plaintiff down on the table and roughly insert a needle into his arm for a blood draw, resulting in injuries to his right hand and shoulder, and severe bruising of his arm.

2

Plaintiff asserts that BAC is an arbitrary measurement that does not accurately quantify driver impairment and is therefore false evidence that does not comport with due process. Along these lines, he argues that the search warrant the MPD officers received to draw blood was invalid because it sought faulty BAC evidence.

Plaintiff pleaded guilty to driving under the influence (DUI), was fined $1,000, placed on probation for a year, had his driver's license suspended for a year, and was required to complete an outpatient DUI program over Zoom with Brandywine Counseling and Community Services (BCCS) in order to get his driver's license back. Plaintiff was involuntarily removed from BCCS's DUI program prior to completion.

Plaintiff names as Defendants the State of Delaware; the Magistrate Judge who signed the search warrant for his blood; the City of Milford and several Milford officials (collectively, the Milford Defendants); the MPD, MPD officers involved in his arrest, and MPD Chief of Police (collectively, the MPD Defendants); Bayhealth Hospital, Bayhealth's Board of Directors, and Bayhealth's Chief Executive Officer and Chief Medical Officer (collectively, the Bayhealth Defendants); BCCS and several BCCS employees (collectively, the BCCS

Defendants); the company that towed his car; and Gannet Corp., News Journal, and Delaware Online (collectively, the Media Defendants).

Plaintiff brings several state-law claims, claims under the Americans with Disabilities Act (ADA), and Constitutional claims under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, and other miscellaneous federal claims.

For relief, he seeks a temporary restraining order directing: (1) the return of his driver's license, (2) the cessation of use of BAC in DUI cases by Milford and Delaware, (3) reinstatement in BCCS's DUI program, (4) the enjoinment of Bayhealth from the BAC collection program, and (5) the enjoinment of BCCS from working with alcoholics and for Delaware. He also seeks $1,000,000 in damages.

## II.  LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013) (quotation marks omitted); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions). The Court must accept all factual

4

allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020). Rather, a claim is deemed frivolous only where it relies on an "'indisputably meritless legal theory' or a 'clearly baseless' or 'fantastic or delusional' factual scenario.'" *Id.*

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 11.

5

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III.    DISCUSSION

### A.    State of Delaware

"Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam)). The State of Delaware has not waived its sovereign immunity under the Eleventh Amendment. *See Jones v. Attorney Gen. of Delaware*, 737 F. App'x 642, 643 (3d Cir. 2018). Accordingly, the claims against Delaware must be dismissed.

**B.    Magistrate Judge**

The Magistrate Judge who signed the search warrant is also immune from suit. "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Id.* (citations omitted).

The allegations establish that the Magistrate Judge acted within the scope of his or her judicial capacity and jurisdiction. This Defendant is therefore immune from suit.

**C.    Federal Claims**

Plaintiff fails to state any federal claims. First, his ADA and Fourteenth Amendment Equal Protection Clause claims that alcoholics are subjected to impermissible discrimination by the enforcement of laws prohibiting driving while under the influence of alcohol are frivolous on their face. His other ADA claims,

7

including disparate impact and retaliation, as well as his federal criminal

conspiracy claim and other miscellaneous federal claims, are similarly frivolous.

Plaintiff's constitutional claims against and the Milford and MPD

Defendants are generally *Heck*-barred because success in this action would

necessarily imply the invalidity of his conviction and sentence, which followed his

guilty plea, and his allegations do not establish that his conviction or sentence has

been invalidated.  *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also*

*Mills v. Pivot Occupational Health*, 2022 WL 17984476, at \*1-2 (3d Cir. Dec. 27,

2022) (per curiam) (affirming dismissal under *Heck* of Fourth Amendment claim

challenging blood draw that led to conviction for reckless driving in Delaware with

a penalty provision for being "alcohol related").  Plaintiff's claims related to the

blood draw additionally fail because the MPD Defendants acted pursuant to a

warrant and his allegations do not, and cannot, demonstrate "(1) that the police

officer 'knowingly and deliberately, or with a reckless disregard for the truth, made

false statements or omissions that create a falsehood in applying for [the] warrant;'

and (2) that 'such statements or omissions are material, or necessary, to the finding

of probable cause.'"  *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000)

(quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)).  For these

reasons, Plaintiff's claims under Fourth, Fifth, and Sixth Amendments, and under

the Due Process Clause of the Fourteenth Amendment, will be dismissed without prejudice. Amendment is futile as to these claims.

Plaintiff referenced the MPD Defendants' use of "excessive force" multiple times in his factual allegations. He did not, however, include a Fourth Amendment claim for excessive force. He did allege "cruel and usual punishments," including "criminal violence against him," under the his Eighth Amendment claim. (D.I. 8 at 38) Given Plaintiff's *pro se* status, the Court will liberally construe this as a Fourth Amendment excessive force claim and dismiss it for failing to state a claim. According to Plaintiff's allegations, he was uncooperative with police officers and resisted arrest. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (holding that excessive-force analysis should take into account whether a plaintiff was "actively resisting arrest"); *see also Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021) (per curiam) (same). As the Supreme Court has noted, "[n]ot every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (citation and quotation omitted); *see also Andresen v. Jackson*, 2023 WL 2137856, at *2 (3d Cir. Feb. 21, 2023) (per curiam) ("The right to make an arrest includes the right to use some degree of physical coercion or threat to effect it.") (citing *Graham*, 490 U.S. at 396).

9

Plaintiff's allegations fall well short of establishing a Fourth Amendment excessive-force claim and amendment is futile, given his allegations.

To the extent that Plaintiff raised other constitutional and federal claims against the Milford and MPD Defendants, such as his First Amendment claim aimed at the impact his arrest would have on his future political campaigns, they are dismissed as futile.

In evaluating the constitutional claims against the BCCS and Bayhealth Defendants, the Court must consider whether these private parties could be considered state actors or acting under color of state law.  *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("[T]here is no liability under § 1983 for those not acting under color of law.").

To determine whether a private party was acting under color of state law, courts consider whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  The Third Circuit has articulated three tests to determine whether such a close nexus exists so as to constitute state action: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert

10

with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). For state action to be found, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

As to the BCCS Defendants, the allegations in the Second Amended Complaint fall well short of satisfying any of these tests. Courts have regularly concluded that private actors such as rehabilitation centers, halfway houses, and their employees were *not* acting under color of state law, even when the plaintiff's stay was ordered by a court or parole board, and even when the private parties exerted far more power over plaintiffs and worked in greater independence with the state than BCCS did here.[2] Based on the facts alleged, it is clear that Plaintiff cannot establish that the BCCS Defendants acted under color of state law.

---

[2] *See, e.g., Daniels v. Nw. Hum. Servs.*, 2021 WL 4166285, at *2 (3d Cir. Sept. 14, 2021) (per curiam) (affirming dismissal where the plaintiff alleged that residential rehabilitation center was "integrated working with the City of Philadelphia and its

11

Finally, Plaintiff's constitutional claims against the Bayhealth Defendants also fail because, per Plaintiff's allegations, they were neither state actors nor acting under the color of state law. *See, e.g.*, *Moore v. Peterson*, 2016 WL 7017380, at *3 (E.D. Wis. Dec. 1, 2016) (finding that a hospital employee who executed a blood draw pursuant to a warrant was not a state actor under § 1983).

---

prison institutions and the state as well," and "[p]eople from the state jails are often sent to these [residential centers] for programs"); *Concepcion v. Kinch*, 2022 WL 103351, at *1, 3 (E.D. Pa. Jan. 11, 2022) (concluding that the employees of a halfway house where the plaintiff resided in connection with the terms of his sentence of probation were not state actors, despite allegations that the plaintiff was mandated to reside at the halfway house, and "if he had been kicked out, . . . he would be sent back to jail"); *Smith v. Alternative Counseling Servs.*, 2021 WL 492513, at *3 (E.D. Pa. Feb. 10, 2021) ("Based on the allegations of the Complaint, it appears that these Defendants—a privately run halfway house, its owner, and its employees—are not subject to liability under § 1983."); *Veeder v. TRI-CAP*, 2020 WL 1867212, at *5 (E.D. Mich. Jan. 30, 2020), *report and recommendation adopted*, 2020 WL 967481 (E.D. Mich. Feb. 28, 2020) ("'[C]ourts have consistently held that drug treatment facilities that treat individuals pursuant to a condition of parole are not performing a public function.'") (quoting *Porter v. Game*, 2020 WL 127580, at *2 (E.D.N.Y. Jan. 9, 2020)); *see also Vaughn v. Phoenix House Programs of N.Y.*, 2015 WL 5671902 (S.D.N.Y. Sept. 25, 2015) (collecting cases and finding no state action when the plaintiff agreed to enter the in-patient treatment program as an alternative to incarceration because the state did not direct his treatment, the program was not a public function, and the program had no role in the criminal proceedings); *cf. Jones v. Eagleville Hosp. & Rehab. Ctr.*, 588 F. Supp. 53, 56 (E.D. Pa. 1984) (finding state action where a parole board mandated a stay in a rehabilitation center, and the parole board informed the plaintiff that "he would be under the supervision, jurisdiction and authority of the employees, staff members and counselors . . . of [the rehabilitation program] and that any disobedience of the same would result in the immediate revocation of his parole.").

12

Case 1:23-cv-00020-CFC   Document 10   Filed 06/23/23   Page 14 of 14 PageID #: 275

Amendment is futile as to the federal claims against the BCCS and Bayhealth Defendants.

**D.    Supplemental Jurisdiction**

Plaintiff's federal claims are frivolous and fail to state claims, as discussed above.  The Court declines to exercise jurisdiction over Plaintiff's supplemental state law claims.  28 U.S.C. § 1367; *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003); *Sarpolis v. Tereshko*, 625 F. App'x 594, 598-99 (3d Cir. 2016).  Given that Plaintiff and all Defendants appear to be Delaware citizens, this Court does not have diversity jurisdiction over Plaintiff's state-law claims. *See* § 1332(a).  Therefore, the state-law claims will be dismissed, without prejudice, for lack of jurisdiction.

**IV.    CONCLUSION**

For the above reasons, the Court will dismiss the Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).  Amendment is futile. Plaintiff's motion to file a second amended complaint (D.I. 6) and motion for summary judgment (D.I. 7) will be denied as moot.

This Court will issue an Order consistent with this Memorandum Opinion.

13